# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **DEREK SHAWN HICKS** § | | |
| **TDCJ No. 02254941** § | | |
| § | | |
| **PETITIONER,** § | | |
| § | | |
| **V.** § | | **W-21-CV-048-ADA** |
| § | | |
| **BOBBY LUMPKIN, Director,** § | | |
| **Texas Department of Criminal Justice,** § | | |
| **Correctional Institutions Division,** § | | |
| § | | |
| **RESPONDENT.** § | | |

## ORDER

Before the Court is Petitioner Derek Shawn Hicks's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) and Respondent's Response (ECF No. 12). Petitioner has also filed a Motion for Leave to Conduct Discovery. (ECF No. 15.) Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), *see* 28 U.S.C. § 2254(d), and that Petitioner's pending motion should be dismissed.

## I. Background

In March 2018, Petitioner pleaded guilty to tampering with or fabricating physical evidence and was sentenced to twelve years imprisonment in cause number DC-F201800276 out of Johnson County, Texas. (ECF No. 12-1 at 2.) In addition to this conviction, Petitioner is also serving a five-year sentence after pleading guilty to unlawful

possession of a firearm out of Tarrant County, Texas; a five-year sentence after pleading guilty to possession with intent to distribute a controlled substance (methamphetamine) out of Tarrant County, Texas; a four-year sentence after pleading guilty to evading arrest with a vehicle out of Collin County, Texas; and a four-year sentence after pleading guilty to tampering with or fabricating physical evidence out of Tarrant County, Texas. (*Id.* at 2-4.)

Petitioner is currently incarcerated in the Boyd Unit of the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID). On October 15, 2019, Petitioner was notified he had been charged with conspiracy to possess a narcotic drug, namely methamphetamine. (ECF No. 13-1 at 3.) At a hearing the next day, Petitioner was found guilty of the charge and punished with, among other things, loss of 120 days of good time credit. (*Id.*) Petitioner filed a Step 1 grievance disputing the conviction the same day, which was denied on November 7, 2019. Petitioner received notification of the denial on December 12, 2019. On December 15, 2019, Petitioner filed his Step 2 grievance, appealing the denial of his Step 1 grievance. This grievance was reviewed and denied on the merits on January 23, 2020. (ECF No. 13-2 at 3-8.)

On January 7, 2021, Petitioner filed his federal petition for a writ of habeas corpus, raising the following four grounds of relief:

1. The charge he was found guilty of, conspiracy to possess, is a non-existent offense;
2. There is no evidence methamphetamines were discussed on the phone;
3. There was no evidence of drugs at any point of the investigation; and

    4. Petitioner was denied due process when the hearing officer relied only on an officer's speculative testimony to convict Petitioner.

(ECF No. 1.) In response, Respondent acknowledges Petitioner's habeas claims are cognizable because he is eligible for mandatory supervision; however, Respondent argues all of Petitioner's claims are time-barred and that Petitioner failed to exhaust his first claim in his state grievances. (ECF No. 9.) In response, Petitioner has filed a Motion to Conduct Discovery, disputing Respondent's arguments that his claims are time-barred and requesting, among other things, that the State produce the recording of the telephone call that generated the disciplinary action. (ECF No. 15.)

## II. Analysis

1. Time-Bar and Exhaustion

    a. *Time-Bar*

Respondent argues all of Petitioner's claims should be dismissed as time-barred. Respondent calculates that Petitioner's Step 1 grievance tolled 22 days—from October 17, 2019 (the day TDCJ received the grievance) through November 7, 2019 (the day TDCJ denied it)—and that his Step 2 grievance tolled 39 days—from December 16, 2019 (the day TDCJ received the appeal) through January 23, 2020 (the day TDCJ denied it). Respondent argues that Petitioner therefore had until December 16, 2020 to file his federal petition, but failed to do so until January 7, 2021.

Petitioner's petition is governed by the federal habeas corpus statutes found at 28 U.S.C. § 2254. *See, e.g., Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000) ("State prisoners who allege that they were improperly denied good-conduct credit that, if

3

restored, would have resulted in their immediate or sooner release from prison, fall under § 2254.") (citations omitted). His petition is therefore also subject to the one-year limitations period imposed by § 2254(d)(1). In *Kimbrell v. Cockrell*, 311 F.3d 361, 364 (5th Cir. 2002), the Fifth Circuit held that "the timely pendency of prison grievance procedures" tolls the one-year limitations period. Respondent does not argue that Petitioner's grievances were untimely filed and also fails to provide any law in support of his interpretation that the period between timely-filed grievances does not toll the limitations period. The Court declines to impose this interpretation and thus concludes Petitioner's grievances tolled the limitations period from October 16, 2019—the day Petitioner signed his Step 1 grievance—through January 23, 2020—the day TDCJ denied Petitioner's Step 2 grievance. Accordingly, calculating the one-year period starting from October 16, 2019, the day Petitioner was convicted of conspiracy to possess methamphetamine, *see* 28 U.S.C. § 2254(d)(1)(D) (limitation period shall run from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence), Petitioner had until January 25, 2021 to timely file his federal petition, *see* FED. R. CIV. P. 6(a)(1)(C). Petitioner filed his petition on January 7, 2021, and thus it is not time-barred.

    b. *Exhaustion*

Respondent further argues that Petitioner's first claim—that he was convicted of a non-existent charge—is unexhausted and procedurally barred from review. Respondent points out that Petitioner did not raise this claim in either his Step 1 or Step 2 grievances.

While Petitioner alludes to this claim in a Step 1 grievance he filed on October 28, 2019, this grievance was dismissed as redundant. (ECF No. 13-2 at 5-6.)

Pursuant to § 2254(b)(1)(A), relief "shall not be granted" unless the petitioner "has exhausted the remedies available in the courts of the State[.]" Although decisions about prison grievances are made by TDCJ, and not by "courts of the State," there is no valid reason that the exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process. *See Preiser v. Rodriguez*, 411 U.S. 475, 492 (1973) (pointing to the prison grievance process and noting that, because the "internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems"). In fact, the Fifth Circuit has long held that inmates seeking relief from prison disciplinary cases must exhaust their available administrative remedies before pursuing a federal writ of habeas corpus. *See Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978).

When a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" a petitioner's claim is procedurally defaulted from federal habeas review. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). The only way for a petitioner to overcome a procedural default is to show cause for the default and resulting prejudice, or to demonstrate that this Court's failure to consider the claims would

result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51 (1991); *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004).

The record shows Petitioner failed to present the substance of Claim 1 in either his Step 1 or Step 2 grievances. Further, Petitioner does not contest the State's argument that he failed to exhaust this claim, nor does he allege any valid circumstance that would allow this Court to excuse the exhaustion requirement. *Se Deters v. Collins*, 985 F.2d 789, 795-96 (5th Cir. 1993). It is now too late for Petitioner to timely grieve this claim through TDCJ's administrative procedures and Petitioner has failed to show cause for his failure to exhaust and prejudice resulting therefrom or that this Court's failure to adjudicate the claim would result in a miscarriage of justice. *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992). Accordingly, this claim is dismissed with prejudice as procedurally barred.

2. Due Process & Some Evidence

In his exhausted claims, Petitioner argues there was no evidence that methamphetamine was discussed during the phone call (claim 2); there was no evidence of drugs at any point during the investigation (claim 3); and he was denied due process by being found guilty solely on the basis of a correctional officer's speculative testimony (claim 3). In a footnote, the State responds there was sufficient evidence presented at the hearing to support Petitioner's conviction. (ECF No. 12 at 6-7 n.3.)

Any loss of good conduct time credits by a prisoner eligible for mandatory supervised release implicates the liberty interests protected by the Fourteenth Amendment's Due Process Clause. *Teague v. Quarterman*, 482 F.3d at 779–80 ("The TDCJ–CID must afford its inmates procedural due process before depriving them of any

6

good-time credit."). Before a prisoner's good time credits can be stripped by the state as a punishment for misconduct, the Fourteenth Amendment's Due Process Clause requires three minimum procedural protections: (1) advanced written notice of the claimed violation, (2) written explanation of the evidence relied upon and the reasons for the disciplinary decision, and (3) the Petitioner's ability to call witnesses and present documentary evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).

The findings of a prison disciplinary hearing are not subject to review by a federal court unless they are arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). In reviewing such findings, the only question before this Court is whether the decision made was supported by "some" evidence. *Broussard v. Johnson*, 253 F.3d 874, 876 (5th Cir. 2001) (citing *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985)). The Court is not required to examine the entire record, to assess independently the credibility of witnesses, or to weigh the evidence. *Hill*, 472 U.S. at 455. "[P]rison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of the prison officials." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994).

Petitioner received notice of the charges against him on October 15, 2019. Petitioner waived his right to twenty-four-hour notice and the hearing was held the next day. Petitioner pleaded not guilty to the charge and was represented by counsel substitute. (ECF No. 13-1 at 3.) At the hearing, Petitioner agreed his counsel substitute had notified him of his rights to present documentary evidence and call witnesses. Petitioner did not present any evidence or witnesses and stated that he did not conspire to

7

bring anything into the facility. Thereafter, the charging officer, J. Romero, testified to the facts stated in Petitioner's offense report: that an investigation of Petitioner's phone calls with his wife revealed their plan for her to bring Petitioner four grams of methamphetamine, a discussion they attempted to disguise through codes like "bring the 4," (which the officers decoded as "4 grams of methamphetamine"), "mall" (which the officers decoded as "drug house"), and "Toby's 7 will equal 700 watts" (which the officers decoded as "by selling Toby's 7 grams of methamphetamine we can make $700.") Officer Romero also testified that, upon learning of the charge against him, Petitioner laughed and admitted he had been caught. Officer Romero testified that the offense report was true and correct. (ECF Nos. 13-1, 13-3.) The hearing officer then found Petitioner guilty and punished him with, among other things, loss of 120 days good time credit, explaining it was based on the serious nature of the offense and to deter future violations.

The record shows that Petitioner's hearing complied with constitutional due process requirements: he was provided notice of the charges against him, given an opportunity to present evidence and call witnesses, and then given a written explanation of the evidence used to support the hearing officer's decision and the reasons for his punishment. Further, regarding Petitioner's claims that the evidence presented is insufficient to support his conviction, the record shows the hearing officer based his finding of guilt on Officer Romero's offense report and testimony, in which Officer Romero detailed the offense and stated Petitioner admitted to the charge. This evidence is "some evidence" and is therefore sufficient to support a finding of guilt. *See Hudson*, 242 F.3d at 536-37 (finding an officer's identification of an offender in a written report constituted "some" or "any"

evidence to support the prison disciplinary board's guilty finding). Petitioner's claim that the evidence was insufficient to support such a finding amounts to a disagreement with the fact-finder's resolution of conflicts in the evidence. It cannot be said in Petitioner's case that "there is no evidence whatsoever to support the decision of the prison officials" that would require overturning her disciplinary proceeding. *Reeves*, 19 F.3d at 1062. These claims are denied.

## V. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of

a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court shall not issue a certificate of appealability.

It is therefore **ORDERED** that the Petition for Habeas Corpus Relief pursuant to 28 U.S.C. § 2254 is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is finally **ORDERED** that all other pending motions are **DISMISSED**.

**SIGNED** this 17th day of September, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE